NOT FOR PUBLICATION                          [Docket No. 26]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| JOHN SWEET,<br><br>     Plaintiff,<br><br>          v.<br><br>COUNTY OF GLOUCESTER, et al.,<br><br>     Defendants. | Civil No. 15-282 (RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

Saul J. Steinberg
David W. Sufrin
Zucker, Steinberg & Wixted, P.A.
415 Federal Street
Camden, NJ 08103
     *Attorneys for Plaintiff*

Christine P. O'Hearn
Christopher Albert Reese
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
     *Attorneys for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon the Motion for

Summary Judgment filed by Defendants County of Gloucester (the

"County") and Wayne Wurtz ("Wurtz" and, together with the

County, the "Defendants") [Docket No. 26].  For the reasons set

forth below, the Court will grant the motion with respect to the

Family Medical Leave Act ("FMLA") interference claim and decline

1

to exercise supplemental jurisdiction over the remaining state law claims.  The remaining state law claims will be remanded to the Superior Court of New Jersey, Law Division, Gloucester County.

I. **FACTUAL BACKGROUND**[1]

This dispute arises from the discipline imposed upon Plaintiff John Sweet (the "Plaintiff" or "Sweet") by his supervisor Defendant Wurtz at the Mosquito Control Commission in

---

[1] As the Defendants note, Plaintiff has failed to comply with District of New Jersey Local Rule of Civil Procedure 56.1(a), which provides in relevant part:

On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted. . . . The opponent of summary judgment <u>shall</u> furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; <u>any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion</u>. . . . Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.

D.N.J. L. Civ. R. 56.1(a) (emphasis added).

Plaintiff did not furnish a responsive statement of material facts, as required.  Therefore, the Court may deem the material facts included in Defendants' Statement of Undisputed Material Facts [Docket No. 26-1] as undisputed and rely upon those facts as appropriate.  Nonetheless, the Court, in an abundance of caution, has also relied upon the exhibits of record to establish the material facts underlying this matter.

the County of Gloucester for allegedly discriminatory reasons.

Plaintiff was originally hired by the County in January 2006 as a building maintenance worker in the County's Buildings and Grounds Department. Sweet Dep. Tr. 44:18-45:13 [Docket No. 26-6, Ex. A]; 1/3/2006 Letter [Docket No. 26-7, Ex. B]. In May 2011, Plaintiff was transferred to his current role as a Mosquito Extermination Inspector. 5/23/2011 Certification [Docket No. 26-9, Ex. D]. While employed as a Mosquito Extermination Inspector, Plaintiff's supervisor was Defendant Wurtz. Sweet Dep. Tr. 133:21-24 [Docket No. 26-10, Ex. E].

A Mosquito Extermination Inspector is required to prepare clear and accurate reports and keep essential records and files. New Jersey Civil Service Commission Job Description for Mosquito Extermination Inspector [Docket No. 26-11, Ex. F]; Sweet Dep. Tr. 139:24-141:19 [Ex. E]. Likewise, New Jersey Department of Environmental Protection regulations mandate that clear and accurate records are kept regarding the application of pesticides by Mosquito Extermination Inspectors. Sweet Dep. Tr. 384:3-11 [Ex. E]. Plaintiff understands and admits that accurate recordkeeping is a crucial part of his job as a Mosquito Extermination Inspector. Id. at 278:14-18.

Specifically, as a Mosquito Extermination Inspector, Sweet is required to complete a worksheet at the end of each shift documenting his work during that shift. Id. at 216:1-9. He is

also required to complete section cards that pertain to particular job locations and document the pesticides sprayed at each particular location over the course of the mosquito season. Id. at 216:10-217:24.

Over the course of his employment as a Mosquito Extermination Inspector, Plaintiff has been disciplined on several occasions, generally for failure to accurately and timely complete his recordkeeping and reporting requirements. See, e.g., 3/26/2012 Disciplinary Memorandum [Docket No. 26-14, Ex. I]; 7/12/2012 Letter [Docket No. 26-17, Ex. L]; 4/29/2013 Disciplinary Memorandum [Docket No. 26-33, Ex. BB].

Plaintiff suffers from attention deficit disorder, anxiety disorder, and occasional severe cluster headaches.  See, e.g., 8/7/2012 Heist Certification [Docket No. 26-22, Ex. Q]. Plaintiff alleges that he informed the Deputy County Administrator, Gerald White, of his disabilities in 2010.  Sweet Dep. Tr. 295:18-296:3 [Ex. E].  He did not, however, provide any documentation of the disabilities at that time or request any accommodations.  Id. at 301:1-12, 303:17-19.

Plaintiff informed Defendant Wurtz of his disabilities for the first time after receiving a disciplinary memorandum on May 21, 2012.  Id. at 302:17-303:15.  He also submitted a doctor's note from Dr. Jon S. Heist, dated May 25, 2012, to his employer which reads in its entirety: "John is presently under my care

Attention Deficit Disorder." 5/25/2012 Heist Note [Docket No. 26-19, Ex. N].

On May 21, 2012, Plaintiff applied for intermittent FMLA leave for the first time. 5/21/2012 Notice of Eligibility [Docket No. 26-20, Ex. O]. As part of his application for FMLA leave, Plaintiff submitted a certification from his doctor, Dr. Heist, which stated that Plaintiff is "unable to perform any job function during flare up" of his cluster headaches. 8/7/2012 Heist Certification [Ex. Q]. Dr. Heist also noted that Plaintiff "only needs reduced schedu[le] during flare ups 1-2 times per month lasting 1-5 days." Id. Plaintiff's request for intermittent FMLA leave was approved by the County on August 21, 2012 for a period of sixty-three days, effective August 7, 2012. 8/21/2012 Letter [Docket No. 26-23, Ex. R].

In or around October 2012, Plaintiff was charged with insubordination and excessive absenteeism for failing to report for mandatory overtime on five dates in August and September 2012. Sweet Dep. Tr. 154:13-22, 165:4-13 [Ex. E]. Plaintiff subsequently filed a grievance against his supervisor, claiming that he could not be forced to work overtime because of his right to intermittent FMLA leave. The grievances were ultimately settled and, as a result, the disciplinary matters related to his failure to report for overtime in August and September 2012 were "voided and removed from the [Plaintiff's]

personnel file." 2/21/2013 Memorandum [Docket No. 26-24, Ex. S]; see also Sweet Dep. Tr. 154:13-155:9 [Ex. E]. Plaintiff was not suspended from work and did not incur any monetary damages as a result of these disciplinary charges being brought against him. See Sweet Dep. Tr. 156:21-157:18 [Ex. E]. Additionally, Plaintiff was never forced to work overtime. Id. at 155:19-24, 171:7-173:5. Plaintiff claims, however, that he lost sleep and suffered from depression as a result of these disciplinary actions being brought against him, although they were ultimately settled in his favor. Id. at 157:17-25, 176:25-177:6.

On May 29, 2013, Plaintiff once again applied for intermittent FMLA leave. 5/29/2013 Notice of Eligibility [Docket No. 26-25, Ex. T]. Plaintiff submitted an additional certification from Dr. Heist, in which Dr. Heist notes that Plaintiff "only needs reduced schedule for flare ups approx. 1-2x per mo 1-2 days" and that "during flare ups the pt is incapacitated due to HA." 6/13/2013 Heist Certification [Docket No. 26-27, Ex. V]. Sweet's request was approved on August 1, 2013 for a period of sixty-three days, effective August 7, 2013. 8/1/2013 Letter [Docket No. 26-28, Ex. W].

Plaintiff next applied for intermittent FMLA leave on July 11, 2014. 7/11/2014 Notice of Eligibility [Docket No. 26-29, Ex. X]. Dr. Heist's certification submitted in support of Plaintiff's request for FMLA leave once against stated that

Plaintiff was "unable to perform any job function during flare up." 7/17/2014 Heist Certification [Docket No. 26-31, Ex. Z]. His request was approved for up to sixty-three days, effective August 7, 2014 and ending on August 7, 2015. 7/28/2014 Letter [Docket No. 26-32, Ex. AA].

On June 19, 2013, Plaintiff requested, via his union, accommodations for his disability. Specifically, he requested that Wurtz go over Plaintiff's assignments with him each morning and that Wurtz review Plaintiff's paperwork at the end of each day to identify and correct any errors. 6/27/2013 Memorandum [Docket No. 26-35, Ex. DD]. The County agreed to implement the first request for accommodation immediately. Id. The County, however, refused to implement Plaintiff's second request for accommodation, explaining that "[t]he proposed reasonable accommodation of reviewing and correcting errors after identified by a Supervisor would require a fundamental change to the nature of the employment, thereby making the accommodation unreasonable." Id. The County offered to "explore other accommodations with [him]" and suggested certain alternatives. Id. Plaintiff did not respond to this invitation. Sweet Dep. Tr. 290:18-291:20 [Ex. E].

After the County implemented Plaintiff's first request for accommodation, Plaintiff was charged with destruction of county property in October 2013, 10/21/2013 Disciplinary Memorandum

[Docket No. 26-36, Ex. EE], and with failure to follow palm scan procedures in March 2014.  3/6/2014 Disciplinary Memorandum [Docket No. 26-38, Ex. GG].  He did not receive any discipline as a result of either charge.  10/29/2013 Memorandum [Docket No. 26-37, Ex. FF]; 3/20/2014 Memorandum [Docket No. 26-39, Ex. HH].

In August 2014, Plaintiff was charged with operating a county vehicle in a careless manner and other related infractions.  8/19/2014 Disciplinary Memorandum [Docket No. 26-40, Ex. II].  Plaintiff was suspended for five days without pay, although the suspension was reduced to a one day suspension after Plaintiff filed a grievance.  1/9/2015 Hearing Officer Decision [Docket No. 26-42, Ex. KK].  In April 2015, Plaintiff was charged with insubordination, inability to perform duties, and neglect of duty because he did not have his pesticide license on him while working.  4/29/2015 Disciplinary Memorandum [Docket No. 26-43, Ex. LL].  He was suspended for three days. 5/7/2015 Memorandum [Docket No. 26-44, Ex. MM].

Based upon these facts, Plaintiff filed this action against Defendant Wurtz and the Defendant County.  In the Amended Complaint, Plaintiff asserts the following six claims against the Defendants: (1) disability discrimination in violation of the New Jersey Law Against Discrimination ("LAD"); (2) failure to provide reasonable accommodations in violation of the LAD; (3) supervisory liability under the LAD; (4) discriminatory

harassment/hostile workplace in violation of New Jersey state law; (5) intentional infliction of emotional distress; and (6) interference with rights under the FMLA.  [Docket No. 1, Ex. C],

## II.   **SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law[.]"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [such] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the

record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). The nonmovant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

III.  **ANALYSIS**

A. **Family and Medical Leave Act**

The FMLA, 29 U.S.C. §§ 2601 et seq., requires state employers, among others, to provide "12 workweeks of leave" for the following reasons: (A) because of the birth of a child of the employee and in order to care for such child; (B) because of the placement of a child with the employee for adoption or foster care; (C) in order to care for the spouse, son, daughter, or parent of the employee, if such relative has a serious health condition; and (D) because of a serious health care condition that makes the employee unable to perform the function of the position of such employee." 29 U.S.C. § 2612(a)(1). The FMLA grants an employee a private right of action against an employer for violations of the FMLA. 29 U.S.C. § 2617(a)(2)(A). The focus of the Plaintiff's FMLA claim is section D, termed the self-care provision, which provides leave to employees because of a serious health care condition. 29 U.S.C. § 2612(a)(1)(D).

The principal objectives of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (quoting 29 U.S.C. § 2601(b)(1) and (2)). "The FMLA contains two relatively distinct types of provisions. First, it creates a series of prescriptive substantive rights for eligible

employees, often referred to as the 'entitlement' or
'interference' provisions which set floors for employer conduct.
. . . Additionally, the FMLA provides protection against
discrimination based on the exercise of these rights, often
referred to as the 'discrimination' or 'retaliation'
provisions." <u>Id.</u> (internal citations omitted).

### i. Plaintiff's Articulated Claim

Throughout the course of this litigation, Plaintiff Sweet
has continuously pursued an FMLA <u>interference</u> claim, not an FMLA
retaliation claim.  In his brief in opposition to the
Defendants' motion for summary judgment, however, Plaintiff, <u>for
the first time</u>, appears to assert an FMLA retaliation claim.  In
his opposition brief, Plaintiff argues that he has established a
prima facie case for a retaliation claim under the FMLA.  Pl.
Opp. Br. at 13 [Docket No. 29].  Yet, no FMLA retaliation claim
is pled in the Plaintiff's Amended Complaint [Docket No. 1, Ex.
C].  Rather, under the heading "Violation of Medical Leave Act,"
Plaintiff alleges facts tracking the elements of an FMLA
interference claim.  <u>See id.</u> at ¶¶ 63-65 ("64. Plaintiff
requested leave to cope with these conditions pursuant to the
laws stated above.  Defendant, County of Gloucester, denied
leave.  65. Plaintiff therefore has sustained damages as a
result of Defendant's, County of Gloucester, violation of the
provisions of the law.").

"A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) (internal citations and quotations omitted); accord Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff's attempt to recast his FMLA interference claim as an FMLA retaliation claim through argument in his opposition brief is improper and insufficient. Plaintiff's Amended Complaint fails to plead an FMLA retaliation claim. This Court will not permit Plaintiff to add or substitute causes of action through legal argument in his opposition brief.

### ii. Abandonment of FMLA Interference Claim

As a preliminary matter, it appears that the Plaintiff has abandoned his FMLA interference claim, in favor of an improperly asserted FMLA retaliation claim. See supra at 12-13. Nowhere in his opposition to the Defendants' Motion for Summary Judgment does the Plaintiff address his FMLA interference claim, let alone argue why it should not be dismissed. Hence, the Court finds that by failing to address the FMLA interference claim at all in his opposition brief, Plaintiff has abandoned the FMLA interference claim as set forth in his Amended Complaint. Fischer v. G4S Secure Sols. USA, Inc., 614 F. App'x 87, 91 n. 3

(3d Cir. 2015) (affirming district court's determination that plaintiff abandoned claim by failing to address it at all in opposition to motion for summary judgment and noting that "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.  If it does not do so, and loses the motion, it cannot raise such reasons on appeal."); see also McKenna v. Portman, 538 F. App'x 221, 224 n. 5 (3d Cir. 2013) ("Although their Amended Complaint seeks relief under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, in their briefs both before this Court and the District Court, Plaintiffs only oppose the dismissal of their Fifth and Fourteenth Amendment claims and essentially concede all remaining claims.").

    For this reason, summary judgment shall be granted on the FMLA interference in favor of the Defendants and the claim shall be dismissed.  Mindful of the preference for adjudicating disputes on their merits, however, the Court will nonetheless address the substance of the Plaintiff's FMLA interference claim.  See Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550 (2010); In re Princeton Office Park, L.P., 2016 WL 2587974, at *3 n. 3 (3d Cir. May 5, 2016).

### iii. **FMLA Interference Claim**

Section 2615(a)(1) of the FMLA provides, "[i]t shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  To succeed on an FMLA interference claim, Plaintiff must show that "he was entitled to benefits under the FMLA and that he was denied them."  Callison, 430 F.3d at 119.  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  Id. at 120.  As such, the familiar McDonnell-Douglas burden-shifting analysis used in employment discrimination matters is not applicable.  Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006).

For Plaintiff Sweet to prevail on his interference claim, he must prove that "(1) [he] was entitled to FMLA benefits; (2) [his employer] violated § 2615 by 'interfering with, restraining, or denying [his] exercise of FMLA rights;' and (3) [he] was prejudiced by the interference."  Scofienza v. Verizon Pennsylvania, Inc., 307 F. App'x 619, 621 (3d Cir. 2008) (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

The Supreme Court in Ragsdale held that the FMLA "provides no relief unless the employee has been prejudiced by the

violation." 535 U.S. at 89.  The Third Circuit has reiterated
that a plaintiff "must demonstrate that he suffered prejudice as
a result of the employer's violation of the" FMLA.  Wilson v.
Virgin Island Water & Power Auth., 470 F. App'x 72, 77 (3d Cir.
2012) (citing Ragsdale, 535 U.S. at 89).  "Prejudice occurs when
the employer's failure to advise the plaintiff of [his] FMLA
rights rendered [him] unable to exercise the right to leave in a
meaningful way, thereby causing injury." Lupyan v. Corinthian
Colleges Inc., 761 F.3d 314, 318-19 (3d Cir. 2014) (internal
quotations and modifications omitted) (citing Ragsdale, 535 U.S.
at 89; Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135,
143 (3d Cir. 2004)).  In sum, "mere technical FMLA violations
are not actionable." Bravo v. Union Cty., 2013 WL 2285780, at
*9 (D.N.J. May 23, 2013) (citing Ragsdale, 535 U.S. at 89).

     The parties do not dispute that Plaintiff was entitled to
FMLA benefits.  This is clear from the fact that the County
approved each request for intermittent FMLA leave submitted by
the Plaintiff.  See 8/21/2012 Letter [Ex. R]; 8/1/2013 Letter
[Ex. W]; 7/28/2014 Letter [Ex. AA].  What's more, it is
undisputed that Plaintiff was not denied any of the FMLA
benefits to which he was entitled.  In fact, Plaintiff admitted
during his deposition that the County has granted each of his
requests for FMLA intermittent leave.  Sweet Dep. Tr. 174:24-

175:1 [Ex. E] ("Q.  Every time you've requested [FMLA
intermittent leave], it has been granted?  A.  Correct.").

Defendants correctly identify that "Plaintiff's only claim
is that he was told at one point that he could not use his
intermittent FMLA leave to be excused from mandatory overtime."
Defs. Br. at 28 [Docket No. 26-2].  Defendants refer to the
October 2012 disciplinary charges against the Plaintiff for
insubordination and excessive absenteeism after he failed to
report for five mandatory overnight shifts in August and
September 2012.  Sweet Dep. Tr. 154:13-22, 165:4-13 [Ex. E].[2]

---

[2] The Court notes that any FMLA claim arising from these
disciplinary charges may likely be barred as duplicative or
under the doctrines of res judicata or collateral estoppel.
"Claim preclusion bars suit when three elements are present: (1)
a final judgment on the merits in a prior suit involving (2) the
same parties or their privies and (3) a subsequent suit based on
the same cause of action."  Davis v. Wells Fargo, 2016 WL
3033938, at *4 (3d Cir. May 27, 2016) (internal quotations
omitted).  Collateral estoppel or issue preclusion, on the other
hand, "bars successive litigation of an issue of fact or law
actually litigated and resolved in a valid court determination
essential to the prior judgment, even if the issue recurs in the
context of a different claim."  Nat'l Med. Imaging, LLC v.
Ashland Funding LLC, 2016 WL 1743475, at *3 (3d Cir. May 3,
2016) (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008)).
Collateral estoppel bars a claim if "(1) the identical issue was
previously adjudicated; (2) the issue was actually litigated;
(3) the previous determination was necessary to the decision;
and (4) the party being precluded from relitigating the issue
was fully represented in the prior action."  Id. at *3 (quoting
Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d
237, 247-48 (3d Cir. 2010))
The Supreme Court has "long favored application of the
common-law doctrines of collateral estoppel (as to issues) and
res judicata (as to claims) to those determinations of
administrative bodies that have attained finality."  Astoria

An essential element of any FMLA interference claim is that the defendant employer interfered with, restrained, or denied Plaintiff's exercise of FMLA rights.  Scofienza, 307 F. App'x at 621 (quoting Ragsdale, 535 U.S. at 89).  It is unclear from the record whether Plaintiff was told before or after he used his intermittent FMLA leave that this leave could not be used to excuse him from the mandatory overtime shifts.  The reasonable inference, however, is that the statement was made after he exercised his FMLA rights because he took the leave at issue. Even if the statement was made prior to Plaintiff's use of intermittent FMLA leave from mandatory overtime, the Plaintiff

---

Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991). Yet without the benefit of the "Letter of Agreement" referenced in the February 21, 2013 Letter setting forth that Plaintiff's grievances have been settled and the disciplinary charges voided and removed from his personnel file [Ex. S], the Court is unable to fully assess the preclusive effect of the County's determination or the settlement between the parties.  See Toscano v. Connecticut Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008) ("The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement. . . . Judicially approved settlements are considered final judgments on the merits for the purposes of claim preclusion.").  Additionally, neither party has addressed this issue.

What is clear to the Court, however, is that the Plaintiff challenged the disciplinary charges instituted against him on the basis that he properly exercised his rights to FMLA intermittent leave during the overtime shifts at issue and that Plaintiff was successful at the administrative level.  To allow him to once again challenge the propriety of the disciplinary charges, this time in federal court, would run counter to well-established preclusion doctrines by granting Plaintiff a second bite at the proverbial apple.  See Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992).

has presented the Court with no evidence that he was deterred by the statement.  In fact, the record demonstrates that the Plaintiff was not deterred by the statement: he exercised his right to take FMLA intermittent leave and did not report for the five overtime shifts at issue.  There is no evidence or even allegation that Plaintiff was forced to work those overtime shifts: it is undisputed that he did not work these shifts.  In the final analysis, without any evidence that the Plaintiff was deterred from exercising his FMLA rights, the Court finds that, regardless of when this statement was conveyed to the Plaintiff, the statement did not "interfer[e] with, restrain[], or deny[]" Plaintiff's exercise of his FMLA rights, as required to establish an FMLA interference claim.  Ragsdale, 535 U.S. at 89.

Furthermore, Plaintiff readily admitted in his deposition that he has never been forced to work overtime since his initial request for FMLA benefits was granted and has never been denied a request for FMLA leave.  Sweet Dep. Tr. 155:19-24, 170:5-20, 171:24-172:8 [Ex. E].  Additionally, even after the disciplinary charges were brought against him, Plaintiff continued to take intermittent FMLA leave and to decline overnight shifts without issue.  Id. at 170:5-15, 172:10-17, 174:3-12.  It is possible that the disciplinary charges brought against the Plaintiff for exercising his FMLA rights could have supported an FMLA retaliation claim, but the Plaintiff has not asserted such a

19

claim in his Amended Complaint.[3]  They do not, however, give rise to an FMLA interference claim as Plaintiff's exercise of his FMLA rights has not been hampered in any way.  For this reason, too, summary judgment shall be granted in favor of the Defendants on Plaintiff's FMLA interference claim.

To the extent that Defendants' statement regarding Plaintiff's use of FMLA leave to be excused from these five overtime shifts or the resulting disciplinary charges instituted against him once he did not report for mandatory overtime duty could be considered "interfering with, restraining, or denying [Plaintiff's] exercise of FMLA rights," see Ragsdale, 535 U.S. at 89, Plaintiff has demonstrated no prejudice that he suffered that can be remedied by the FMLA.  See Capilli v. Whitesell Const. Co., 271 F. App'x 261, 267 (3d Cir. 2008) (affirming grant of summary judgment on FMLA interference claim where employer's interference did not result in any prejudice to plaintiff); Yansick v. Temple Univ. Health Sys., 297 F. App'x 111, 113 (3d Cir. 2008) (same).

---

[3] The Court has already rejected Plaintiff's improper attempt to recast his FMLA interference claim as an FMLA retaliation claim through argument in his opposition brief.  See supra at 12-13.  The Plaintiff is bound by his Amended Complaint and cannot attempt to amend his complaint once again through his brief.  Bell, 275 F. App'x at 160; Zimmerman, 836 F.2d at 181.  The Court in no way expresses a ruling or determination as to whether these charges could have in fact given rise to an FMLA retaliation claim, had one been properly pled.

Ultimately, the disciplinary actions were resolved in Plaintiff's favor and the charges were voided and removed from his personnel file.  Id. at 154:13-155:9; 2/21/2013 Memorandum [Ex. S].  Plaintiff was not forced to work overtime and admits that he was never denied a request for FMLA leave.  Sweet Dep. Tr. 155:19-24, 170:5-20, 171:24-172:8 [Ex. E].  Plaintiff was not suspended from work or demoted.  He did not lose wages or benefits, or suffer any other monetary loss as a result of the disciplinary charges.  Id. 155:25-157:18.  The only harms Plaintiff claims occurred due to the charges are that he lost sleep every other night while the charges were pending and that he suffered depression as a result of the charges.  Id. at 156:4-11, 157:17-25, 176:25-177:6.  However, Plaintiff did not see a doctor for any mental health concerns during this time.  Id. at 158:1-2.  Plaintiff has never been diagnosed with any mental health disorders related to the disciplinary charges or any other workplace stressors and is not taking medication for depression or insomnia.  Id. at 159:11-13, 314:1-316:1, 325:11-18.[4]

---

[4] In any case, any emotional damages suffered by the Plaintiff are not compensable under the FMLA.  See Brown v. Nutrition Mgmt. Servs. Co., 370 F. App'x 267, 274 (3d Cir. 2010) (noting that, while the Third Circuit has not yet directly held, "the parties' conclusion [that emotional distress, pain and suffering, and punitive damages are not recoverable under the FMLA] is supported by the statutory text of the FMLA and the decisions of our sister courts of appeals.") (relying on 29

Additionally, Plaintiff's willingness to exercise his FMLA rights has in no way been chilled as a result of the disciplinary charges.  In fact, he has continued to exercise his FMLA rights by taking FMLA leave regularly.  See Id. at 174:3-175:12 (testifying that Plaintiff used nineteen FMLA days between August 2012 and June 2013, approximately sixteen FMLA days in 2013, and approximately ten FMLA days in 2014).

At most, the disciplinary charges rise to the level of a "mere technical violation" that is not actionable under the FMLA since the Plaintiff has failed to demonstrate prejudice.  Bravo, 2013 WL 2285780, at *9 (citing Ragsdale, 535 U.S. at 89).  For this reason, too, the Plaintiff's FMLA interference claim fails.

---

U.S.C. § 2617(a); Farrell v. Tri-Country Metro Transp. Dist. Of Or., 530 F.3d 1023, 1025 (9th Cir. 2008); Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1007-08 (6th Cir. 2005)).  The FMLA provides that an employer who interferes with an employee's FMLA rights is liable for damages equal to "(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care[.]" 29 U.S.C. § 2617(a)(1)(A)(i); see also Ragsdale, 535 U.S. at 89 ("§ 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion.") (quoting 29 U.S.C. § 2617(a)(1)(A) and (B)).

**B. Remaining State Law Claims**

Having granted summary judgment in favor of the Defendants on Plaintiff's only federal law claim, and with this Court's subject matter jurisdiction premised on federal question jurisdiction, this Court must determine whether it will exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  See Kalick v. Nw. Airlines Corp., 372 F. App'x 317, 322 (3d Cir. 2010).  "Absent extraordinary circumstances, 'jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable.'"  Id. (quoting Shaffer v. Bd. of Sch. Dirs. Of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984)).  Because no extraordinary circumstances are evident here, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[5]  See Kalick, 372 F. App'x at 322; Hunter v. Rowan Univ., 2007 WL 1038760 (D.N.J. Mar. 30, 2007), aff'd, 299 F. App'x 190 (3d Cir. 2008).  This matter was removed to this Court from the Superior Court of New Jersey, Law Division, Gloucester County.  Accordingly, the remaining state law claims will be remanded to the Superior Court of New Jersey, Law Division, Gloucester County.

---

[5] The remaining state law claims require an in depth analysis of applicable New Jersey law.

**IV.     CONCLUSION**

        For the reasons set forth above, this Court will grant the

Motion for Summary Judgment as to the FMLA interference claim

(Count VI of the Amended Complaint) in favor of the Defendants.

The Court declines to exercise supplemental jurisdiction over

all remaining state law claims.  The remaining state law claims

will be remanded to the Superior Court of New Jersey, Law

Division, Gloucester County.  An appropriate Order will issue

this date.


                            s/Renée Marie Bumb
                            RENÉE MARIE BUMB
                            UNITED STATES DISTRICT JUDGE

Dated: June 15, 2016